**David Leslie THOMPSON,
Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT and Jim
Smith, Respondents-Appellees.**

No. 85–3215.

United States Court of Appeals,
Eleventh Circuit.

March 20, 1986.

Rosemary Cakmis, Federal Public Defender, Jacksonville, Fla., for petitioner-appellant.

Michael Kotler, Asst. Atty. Gen., Tampa, Fla., for respondents-appellees.

Before HILL, Circuit Judge, TUTTLE and HENDERSON[*], Senior Circuit Judges.

HILL, Circuit Judge:

## FACTS

Appellant David Thompson stabbed a seventeen year-old co-worker in the back and chest with a large knife before numerous witnesses in the restaurant where they worked. Some of the witnesses, appellant's co-workers, had heard him threaten to "get even" with the victim because he had apparently struck appellant during an altercation the previous day. The police apprehended appellant, with the bloody knife in his pocket, a short distance from the restaurant. On several instances while in custody, appellant spontaneously and vehemently expressed his ardent desire that the victim was dead.

Appellant pleaded guilty to a charge of first-degree murder in Florida state court and was sentenced to life imprisonment. He did not appeal his sentence nor did he pursue post-conviction relief for nearly eight years. After exhausting his state remedies, appellant sought federal habeas corpus relief, claiming his guilty plea was involuntary due to ineffective assistance of counsel. The magistrate held an evidentiary hearing on appellant's petition. At this hearing, appellant testified he met with his counsel only twice, each time for less than five minutes. Appellant also testified that his counsel told him he would probably get the electric chair if he did not plead guilty. Moreover, appellant stated his counsel never discussed with him the testimony that would be presented against him or his version of the incident, and did not discuss plea bargaining or explain the sentence he would receive if he pleaded guilty. As a result, appellant claimed he was completely ignorant of the consequences of his guilty plea. Even after he reviewed the transcript of the change of plea/sentencing hearing, appellant insisted the trial judge only asked him how he got along with his counsel before pronouncing sentence. The transcript belied this statement and the magistrate obviously discredited appellant's testimony.

Trial defense counsel Jeffrey Myers testified concerning his work on appellant's case. Regarding his investigation of a possible insanity defense, Myers stated that he or his office investigators contacted appellant's family, obtained reports from Traverse City State Hospital and arranged for examination by two psychiatrists. The first psychiatrist found appellant was schizophrenic but competent to stand trial and knew the difference between right and wrong; the second psychiatrist did not file a report because appellant refused to cooperate with him. Myers recalled at least five meetings with appellant. He stated that he discussed with appellant the facts of the case, the testimony that the prosecution would offer and the strength of the state's case against him. In addition, he testified that he explained the degrees of murder and the evidence regarding premeditation. He also testified that he advised appellant the death penalty was a potential and realistic possibility if he was convicted, but that he did not discuss the specific aggravating and mitigating circumstances that might be found. Finally, Myers stated that he discussed the consequences of the plea arrangement with appellant, who appeared to understand them. When questioned about his own understanding of the Florida death sentence statute, enacted shortly before this case commenced, Myers testified that this was his first capital case under the new statute but he was familiar with the statutory changes and that it was his professional opinion that appellant would receive the death sentence if he went to trial. He further testified that he met with the prosecuting attor-

---

[*] See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

neys several times, felt the state had a strong case and believed the plea agreement was in appellant's best interest.

The final witness at the evidentiary hearing was the prosecuting attorney. He testified that the state's case against appellant was superb, he felt there was 100% likelihood of conviction and a sufficient likelihood of the death penalty to go to trial. In fact, at the time, he personally would have preferred to try the case and expose appellant to the death penalty. The prosecutor testified he did not make the final decision to accept appellant's guilty plea and that he had made known his opposition to the plea negotiations. With the benefit of hindsight and experience, however, he guessed a death sentence in this case would not have withstood appeal. He also believed appellant understood the plea at the change of plea hearing.

The magistrate later issued his report and recommendation that appellant's petition be denied because appellant entered a voluntary plea upon advice of competent counsel. The district court adopted this report and recommendation and denied the petition.

## DISCUSSION

### I

Appellant first argues the case should be remanded because the magistrate's Report and Recommendations does not contain specific credibility choices or factual findings necessary to allow the district court to make a *de novo* review. Although it is true the magistrate did not articulate detailed findings on every disputed fact, the Report and Recommendation clearly states his findings, supported by record references, that counsel adequately prepared the case, appellant understood the plea agreement and voluntarily pleaded guilty upon advice of competent counsel.

### II

Appellant alleges two separate instances of ineffective assistance of counsel: First, that counsel did not adequately investigate appellant's insanity defense, and second, that he pleaded guilty to avoid the death penalty based on defense counsel's allegedly erroneous advice.

The Supreme Court recently held the two-part *Strickland v. Washington* test for evaluating claims of ineffective assistance of counsel also applies to guilty pleas. *Hill v. Lockhart,* —— U.S. ——, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). To satisfy this test, appellant must show not only "that counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), but also that he was prejudiced by counsel's unprofessional errors. *Id.,* 104 S.Ct. at 2067. This prejudice requirement

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart,* 106 S.Ct. at 370. Appellant has not demonstrated incompetence or prejudice with regard to either claim.

With respect to counsel's alleged failure fully to investigate appellant's insanity defense,

> where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative de-

fense likely would have succeeded at trial.

*Id.* at 370–71.

Appellant's counsel testified that he arranged for examination by two psychiatrists: the first found appellant competent to stand trial and at the time of the offense; the second never filed a report because appellant refused to cooperate with him. Appellant does not dispute this testimony. In addition, counsel contacted appellant's parents and Traverse City State Hospital and requested information that might assist in his defense. Based on the information he received, particularly the psychiatrist's conclusion, defense counsel concluded that an insanity defense would be unsuccessful. Appellant does not provide any basis for this court to hold that this conclusion was unreasonable. Instead, he claims counsel should have scheduled three psychiatric evaluations. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland,* 104 S.Ct. at 2066. Since appellant did not cooperate with the second psychiatrist, he cannot blame the lack of additional psychiatric examinations on incompetent counsel. Moreover, appellant has not suggested any information counsel would have discovered upon further investigation which would have caused him to change his recommendation as to the plea.

■ Appellant's primary claim is that he could not have received the death penalty and would not have pleaded guilty but for his counsel's erroneous advice to the contrary. Florida had enacted a new death penalty statute a few months before appellant's indictment, plea and sentencing. *See* Fla.Stat. § 921.141 (Supp.1972). The new statute required the trier of fact to consider "evidence of the circumstances surrounding the crime and of the defendant's background and history and any facts in aggravation or mitigation," including, but not limited to, a list of specified aggravating and mitigating circumstances, to determine whether the death penalty should be imposed. *Id.* Appellant argues that only one of the listed aggravating circumstances was "arguably applicable" while as many as five mitigating circumstances might have been found. Moreover, appellant relies on the prosecutor's statement at the evidentiary hearing that, with the benefit of hindsight and experience, he guessed a death sentence would not have withstood appeal.

Hindsight, however, is not the appropriate perspective for a court to examine counsel's effectiveness.

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentencing, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac,* 456 U.S. 107, 133–34, 102 S.Ct. 1558, 1574–75, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Strickland,* 104 S.Ct. at 2065–66. Myers and the prosecutor both testified that, at the time of appellant's guilty plea, they and the judge all believed appellant could be sentenced to death under the new statute, if convicted, and that conviction was certain. We note that the statutory factors had not yet been tested or interpreted; appellant can only guess that a jury *might* have found some of the mitigating circumstances applicable. Moreover, one aggra-

vating circumstance might have outweighed several mitigating circumstances. Thus, we cannot find counsel's advice to have been unreasonable when given. Appellant argues counsel should have discussed the possible aggravating and mitigating circumstances with him. He does not, however, claim he would have independently evaluated these factors and chosen not to plead guilty after such a discussion despite his counsel's conclusion that the death penalty was possible. Because appellant has not alleged prejudice, we need not determine whether this failure may be deemed constitutionally ineffective assistance of counsel.

Finally, appellant alleges defense counsel should have attempted to negotiate a plea to a lesser offense. The record, particularly the former prosecutor's testimony at the evidentiary hearing, supports the conclusion that such an attempt would have been futile.

We hold the district court did not err in dismissing appellant's petition.

AFFIRMED.