497 So.2d 863 (1986)
David Eugene JOHNSTON, Appellant,
v.
STATE of Florida, Appellee.
No. 65525.
Supreme Court of Florida.
November 13, 1986.
*865 Ronald R. Findell, Orlando, for appellant.
Jim Smith, Atty. Gen. and Richard W. Prospect, Asst. Atty. Gen., Daytona Beach, for appellee.
ADKINS, Justice.
David Eugene Johnston appeals his conviction for first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction and death sentence.
At approximately 3:30 a.m. on November 5, 1983, David Eugene Johnston called the Orlando Police Department, identified himself as Martin White, and told the police "somebody killed my grandma" at 406 E. Ridgewood Avenue. Upon their arrival, the officers found the dead body of 84-year-old Mary Hammond. The victim's body revealed numerous stab wounds as well as evidence of manual strangulation. The police arrested Johnston after noticing that his clothes were blood-stained, his face was scratched and his conversations with the various officers at the scene of the crime revealed several discrepancies as to his account of the evening's events.
The record reveals that prior to the murder Johnston had been working at a demolition site near the victim's home and had had contact with the victim during that time. In fact, Johnston was seen washing dishes in the victim's apartment five nights before the murder.
Johnston was seen earlier on the evening of the murder without any scratches on his face and the clothing he was wearing tested positive for blood. In addition, the watch that Johnston was seen wearing as late as 1:45 a.m. on the morning of the murder was found covered with blood on the bathroom countertop in the victim's home. Further, a butterfly pendant that Johnston was seen wearing as late as 2:00 a.m. that morning was found entangled in the victim's hair. The record also reveals that a reddish-brown stained butcher-type knife was found between the mattress and the boxspring of the victim's bed, a footprint matching Johnston's shoe was found outside the kitchen window of the victim's house, and that silver tableware, flatware, a silver candlestick, a wine bottle and a brass teapot belonging to the victim were found in a pillowcase located in the frontend loader parked at the demolition site.
Appellant now alleges that twenty-two errors occurred below. As in Medina v. State, 466 So.2d 1046, 1048 n. 2 (Fla. 1985), we summarily reject many of the issues raised by appellant that we have rejected in the past and similarly do not warrant reversal in this instance. Thus, we conclude that the trial court did not err in denying the following motions: to preclude challenge for cause of the potential jurors; to vacate the death penalty because the aggravating and mitigating circumstances enumerated in section 921.141, Florida Statutes (1983), are impermissibly vague and overbroad; to allow individual voir dire and sequestration of the jurors during voir dire; to strike death as a possible penalty and dismiss the indictment because it failed to allege applicable aggravating circumstances; and to prohibit the state from questioning any prospective jurors as to their attitudes towards capital punishment prior to a conviction. Further, based on Medina and the record in this case, we find that the following issues are without merit and do *866 not warrant discussion: whether a defendant is entitled to a statement of aggravating circumstances; whether the shackling of defendant resulted in prejudice; and whether the trial court erred in refusing to instruct the jury on circumstantial evidence.
Other issues which the record clearly reveals do not entitle Johnston to relief are the following: whether the trial court erred in denying appellant's motion to voir dire individual grand jurors, Porter v. State, 400 So.2d 5 (Fla. 1981); whether the trial court erred in denying the defendant's motion to dismiss the indictment as vague, O'Callaghan v. State, 429 So.2d 691 (Fla. 1983); whether the trial court erred in denying the defendant's motion for judgment of acquittal; whether the trial court erred in admitting a photograph of the victim into evidence, Foster v. State, 369 So.2d 928 (Fla.), cert. denied, 444 U.S. 885, 100 S.Ct. 178, 62 L.Ed.2d 116 (1979); whether the trial court erred in refusing to instruct the jury on aggravated battery, battery and assault, Martin v. State, 342 So.2d 501 (Fla. 1977); and whether comments made by the prosecutor during the sentencing phase of the trial were improper. Bertolotti v. State, 476 So.2d 130 (Fla. 1985).
In an argument that warrants little discussion, we note that appellant's contention that the trial court erred in denying his motion for notification of convening the grand jury is moot because counsel for appellant appeared before the grand jury when the state presented its case against Johnston.
Appellant contends that the trial court erred in denying his motion to enforce section 914.04, Florida Statutes (1983), and his motion in limine requesting the court to prohibit the state from introducing into evidence the statement of the defendant discussing two letters. We disagree. On December 19, 1983, appellant requested to speak to Investigator Mundy, at which time he confided that he had received a letter from someone named "Sissy" who confessed to the murder. Appellant explained that he gave a copy of the letter to his attorney. Appellant also told his girlfriend that he received a different letter from someone confessing to the murder.
The office of the state attorney issued subpoenas duces tecum to both of the appellant's attorneys, seeking any written statement which purported to be a confession to the killing of the victim by any person other than appellant. Appellant filed a motion to quash the subpoenas which, after a hearing, was denied. Both attorneys then responded to the subpoenas and turned the two letters over to the prosecutor. In a later statement to Investigator Mundy, appellant revealed that he had written both letters. The letters and appellant's statement regarding the letters were subsequently introduced at trial.
Section 914.04 provides that neither testimony given pursuant to a subpoena nor evidence procured through a subpoena duces tecum shall be received against the person compelled to give the testimony or produce the evidence. We find that no considerations of immunity came into play in this instance because the letters were produced by appellant's attorney and received at trial against the defendant. Further, no considerations of immunity come into play since it was appellant who intiated the conversation; the state did not compel his testimony.
Appellant seeks to circumvent the abovementioned deficiencies in his argument by asserting that since the letters were sent by him to his attorneys for their own personal viewing, the documents then became subject to the attorney-client privilege. Proceeding on this premise, appellant claims that the issuance of a subpoena duces tecum was equivalent to an issuance to him personally, and thus, once he was compelled, through his attorneys, to produce the letters, section 914.04 was activated and the immunity thus created required the trial court to grant his motions.
Section 90.502, Florida Statutes (1983), recognizes the attorney-client privilege. Subsection (2) provides that a client *867 may refuse to disclose confidential communications between the client and his attorney. The privilege is limited to confidential communications between the client and attorney. The attorney-client privilege is inapplicable to the case at bar because the letters do not constitute confidential communications. Subsection (1)(c) defines a confidential communication as one not intended to be disclosed to third persons. The existence of the letter was revealed to Investigator Mundy and its contents were revealed to appellant's girlfriend. Obviously, appellant cannot claim that what he "communicated" to his lawyers was confidential or in any way privileged. See Mobley v. State, 409 So.2d 1031 (Fla. 1982). Accordingly, the denial of the motion to enforce section 914.04 was correct. Further, the combination of the lack of immunity in regard to the letters and the failure of defense counsel to object to the testimony regarding statements made by Johnston about the letters leads us to conclude that the motion in limine was properly denied and the testimony regarding the statements was admissible.
Appellant alleges that the trial court's denial of the public defender's motion to withdraw as counsel denied him the effective assistance of counsel. In a related claim, appellant contends that he was denied his right to self-representation by the trial court's denial of his oral motion to discharge counsel, which was made at a hearing on counsel's motion to withdraw. The trial court correctly denied both motions.
The public defender sought to withdraw from the case, in part, because Johnston disregarded his advice by continually calling the Orlando Police Department and inviting them to the jail so that he could give statements about the murder. Counsel also indicated that he could not pursue a line of defense suggested by appellant. The public defender considered the line of defense completely unethical. Counsel never disclosed this line of defense to the court because of the attorney-client privilege.
In verbalizing the reasons why he sought to discharge counsel and represent himself, appellant alleged that his lawyers invaded his right to privacy because they were in possession of a letter he had written to his stepmother. Appellant also expressed dissatisfaction with his attorney's failure to pursue a requested line of defense. As mentioned earlier, counsel considered this line of defense unethical.
At a hearing held on the public defender's motion to withdraw, the trial court advised Johnston of the various alternatives in regard to representation: 1) he could elect to retain his own attorney privately from his own source of funds, 2) he could elect to be represented by the public defender, or 3) he could elect to represent himself. The trial court then went on to explain the dangers and disadvantages of self-representation, as required by Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The public defender still insisted that he be allowed to withdraw and Johnston continued to assert his right to self-representation.
A trial court is obligated to examine the reasons given by a defendant to support his motion to discharge counsel and the grounds behind counsel's motion to withdraw. Smith v. State, 444 So.2d 542 (Fla. 1st DCA 1984). The trial court examined the reasons underlying the defendant's motion and properly concluded that they were insufficient. As the trial court explained to Johnston, counsel did not invade his right to privacy because Johnston's stepmother, on her own initiative, delivered the letter in question to the public defender's office. Further, the trial court commented that all attorneys are constrained by ethical considerations, and, in all likelihood, all attorneys would be precluded from pursuing the line of defense advocated by Johnston. In addition counsel cannot withdraw from a case merely because his client failed to follow his advice. Were we to hold otherwise, the floodgates would open, and substitution of counsel would be warranted in an untold number of cases. Significantly, neither appellant *868 nor counsel alleged any conflict of interest and an open line of communication existed throughout the trial. General loss of confidence or trust standing alone will not support withdrawal of counsel. Thomas v. Wainwright, 767 F.2d 738 (11th Cir.1985), cert. denied, ___ U.S. ___, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986). The trial court was correct in concluding that no adequate reasons were given to support withdrawal of counsel. Thus, the trial court's denial of the motion to withdraw did not, per se, render counsel ineffective.
The trial court properly denied appellant's request for self-representation. A criminal defendant has a right to represent himself. State v. Cappetta, 216 So.2d 749 (Fla. 1968), cert. denied, 394 U.S. 1008, 89 S.Ct. 1610, 22 L.Ed.2d 787 (1969). However, the right to self-representation is not absolute. Florida Rule of Criminal Procedure 3.111(d)(3) contemplates that a criminal defendant will not be allowed to waive assistance of counsel if he is unable to make an intelligent and understanding choice because of, inter alia, his mental condition. Stated simply, waiver of one's right to counsel must be intelligent and knowing. Smith v. State, 407 So.2d 894 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982).
In determining whether a defendant has knowingly and intelligently waived his right to counsel, a trial court should inquire into, among other things: defendant's age, mental status, and lack of knowledge and experience in criminal proceedings. Keene v. State, 420 So.2d 908 (Fla. 1st DCA 1982), review denied, 430 So.2d 452 (Fla. 1983). The trial judge made the proper inquiry in this case and correctly concluded that the desired waiver of counsel was neither knowing nor intelligent, in part, because of Johnston's mental condition. In fact the court's order denying Johnston's motion for self-representation and counsel's motion to withdraw specifically cited Johnston's age, education, and reports of psychiatrists and past admissions into mental hospitals. Clearly, the trial court was correct in concluding that Johnston would not receive a fair trial without assistance of counsel.
Appellant next alleges that the trial court erred in denying three motions for mistrial, all of which were made following a statement which was allegedly admitted in violation of Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). Williams proscribes the admission of evidence pertaining to bad character or propensity before the defendant places his character in issue before the jury. See also § 90.404(2)(a), Fla. Stat. (1981).
The first remark complained of involves a friend of Johnston's who testified that he found a bag of marijuana in Johnston's clothes. Immediately following this remark defense counsel requested that the attorneys approach the bench, at which time he objected to the reference to the drugs. However, counsel never asked for a curative instruction and failed to make a motion for a mistrial. As the court pointed out, "I have nothing to rule on at this point." We refuse to find that the trial court erred in denying a motion that had never been made. Further, the record reveals that there had been prior testimony that Johnston had been drinking that night and testimony was forthcoming about appellant's heavy drug usage on the evening in question. Hence, aside from the fact that the propriety of the reference to the bag of marijuana had not been properly objected to, the reference to the drugs was hardly prejudicial in light of the subsequent evidence regarding appellant's heavy drug usage on the evening in question.
The second and third allegedly prejudicial remarks both involve comments pertaining to Johnston's prior incarceration. The second remark occurred during the questioning of Jose Mena, an acquaintance of Johnston's, who testified that he met Johnston in jail. Counsel objected to the remark and moved for a mistrial only after four additional questions had been asked and answered. We reject the state's contention and the trial court's finding that *869 the objection and motion for mistrial, made after four additional questions had been asked and answered, did not comply with the contemporaneous objection rule outined in Clark v. State, 363 So.2d 331 (Fla. 1978). See Roban v. State, 384 So.2d 683 (Fla. 4th DCA), review denied, 392 So.2d 1379 (Fla. 1980). However, the general objection and motion for mistrial were not made with the required specificity to apprise the trial court of error or preserve the objection for appellate review. Ferguson v. State, 417 So.2d 639 (Fla. 1982); Castor v. State, 365 So.2d 701 (Fla. 1978).
The third remark was made by Robert Mundy, an investigating officer, who testified about a phone call he had received from Johnston in which Johnston indicated that he wanted to make a deal with the judge. The following comment then occurred:
Q. Okay. At this point in time were you asking Mr. Johnston any questions or were you just listening to what he was saying?
A. I was listening to what Mr. Johnston was telling me.
Q. All right, and did he go on to tell you anything further?
A. Yes, he did. He stated that he was scared because he had already gone to jail for two years for something.
The trial court sustained counsel's contemporaneous objection, instructed the jury to disregard the remark, and denied the motion for a mistrial.
A motion for a mistrial is addressed to the sound discretion of the trial judge and should only be granted in the case of absolute necessity. Salvatore v. State, 366 So.2d 745 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979). In Williams v. State, 354 So.2d 112 (Fla. 3d DCA 1978), the court held that a witness' reference to the defendant having previously been imprisoned was not sufficient to require a mistrial in light of the curative instruction given by the trial court. In Ferguson v. State, 417 So.2d 639 (Fla. 1982), we held that the trial court did not abuse its discretion in denying a motion for a mistrial made immediately after a witness testified that he met the defendant in prison. Having carefully reviewed the record, we conclude that any alleged prejudice which may have resulted from a reference to prior incarceration was fully alleviated by the curative instruction. The trial court did not abuse its discretion in denying the motion for a mistrial.
Appellant next alleges that the trial court erred in swearing in each individual juror as selected, thus preventing "backstriking" of jurors. Absent exigent circumstances, Tedder v. Video Electronics, 491 So.2d 533 (Fla. 1986), the procedure used by the trial court violated Florida Rule of Criminal Procedure 3.310, which provides that a defendant may challenge a prospective juror before the juror is sworn to try the case. Rivers v. State, 458 So.2d 762 (Fla. 1984); Jones v. State, 332 So.2d 615 (Fla. 1976). The prohibition against backstriking is not subject to appellate review unless the complaining party attempted to backstrike a previously sworn juror. Rivers. Appellant never attempted to backstrike a juror and therefore cannot complain on appeal.
The next issue raised by appellant is whether the trial court erred in overruling his objection to questioning during the redirect examination of Karen Fritz, the victim's granddaughter and next door neighbor, and Officer Roberts, an officer called to the scene of the crime. The trial court did not err. A party may re-examine a witness about any matter brought up on cross-examination, Noeling v. State, 40 So.2d 120 (Fla. 1949), and a trial court has broad discretion in determining the proper scope of the examination of witnesses. Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981). As the record indicates, the redirect examination of Karen Fritz and Officer Roberts was completely within the scope of questions asked on cross-examination and the trial court did not abuse its discretion in so finding.
*870 Appellant next asserts that the trial court erred in denying his motion for a new trial regarding the testimony of Donald Ostermeyer, a police officer and evidence technician. Ostermeyer testified about a Luminol test he performed on Johnston's clothes. During his testimony Ostermeyer revealed that the Luminol test he performed on Johnston's clothing was a presumptive blood test, and that the test revealed the presence of blood on Johnston's clothes.
At the outset, we note that trial counsel never made a motion for a new trial in regard to the specific testimony in question. The only possible relation between a request for a new trial and Ostermeyer's testimony rests in a motion for a new trial which refers to all objections made at trial. Given the fact that an appellate court will not overturn a trial court's order granting or denying a new trial absent an abuse of discretion, Baker v. State, 336 So.2d 364 (Fla. 1976); Bell v. State, 90 So.2d 704 (Fla. 1956), and all of the grounds alleged in the motion for a new trial are without merit, we refuse to overturn the trial court's order denying appellant's motion for a new trial. Warren v. State, 443 So.2d 381 (Fla. 1st DCA 1983). Nevertheless, we will examine the propriety of the objections made to Ostermeyer's testimony.
Appellant alleges that the opinion testimony of Officer Ostermeyer is inadmissible because he was never qualified as an expert in the detection of blood as required by section 90.702, Florida Statutes (1983). We disagree.
Although never qualified as an expert, Officer Ostermeyer was an evidence technician and a member of the Orlando Police Department for twelve years. It can be inferred from the record that had defense counsel requested that the prosecutor `prove' that Officer Ostermeyer was an expert in the field of Luminol testing, the prosecutor would have had little trouble in qualifying Officer Ostermeyer as an expert.
The testimony given by Officer Ostermeyer in this instance is analogous to the non-expert testimony held admissible in Jones v. State, 440 So.2d 570 (Fla. 1983), and Peacock v. State, 160 So.2d 541 (Fla. 1st DCA), cert. denied, 168 So.2d 148 (Fla. 1964), cert. denied, 381 U.S. 916, 85 S.Ct. 1541, 14 L.Ed.2d 436 (1965).
In Jones, we held that a police officer's testimony that the mark on the "stash house" window sill was made by the recoil of a high-powered rifle was admissible. Our holding was based, in part, on the fact that the police officer "possessed a working knowledge of firearms gained through his training as a police officer and through his extensive work as an evidence technician." 440 So.2d at 574. Similarly, Officer Ostermeyer demonstrated that he possessed a sufficient working knowledge of Luminol testing. In Peacock, the court allowed a deputy to testify as to his visual comparison of a defendant's automobile tires with casts of tire prints found on and near the scene of the crime. In affirming the trial court's decision to admit such testimony, the court stressed the fact that the jury ultimately determines the credence and weight of the testimony. 160 So.2d at 543. Likewise, in this instance, the jury properly determined the value and accuracy of the results of the admittedly "presumptive" Luminol blood test.
Appellant complains that the testimony of Officer Stickley and the closing argument of the prosecutor both contain improper comments on Johnston's fifth amendment right to remain silent. This contention has not been preserved for appellate review because not only were the required contemporaneous objections never lodged at trial, Clark v. State, 363 So.2d 331 (Fla. 1978), but counsel never even belatedly objected to the comments. As an aside, we note that the allegedly improper comment made by the prosecutor was merely a comment on the evidence and was not fairly susceptible of being interpreted by the jury as a comment on the defendant's right to remain silent. State v. Kinchen, 490 So.2d 21 (Fla. 1985); State v. Sheperd, 479 So.2d 106 (Fla. 1985).
*871 Finally, appellant alleges that the trial court's order accepting the jury's advisory sentence of death contains numerous errors and therefore must be overturned. We disagree. The sentence of death was imposed after a finding of three aggravating and no mitigating circumstances. Appellant contests the propriety of two of the three aggravating circumstances as well as the finding that no mitigating circumstances exist.
Appellant admits that the trial court was justified in finding, as an aggravating circumstance, that he was previously convicted of a felony involving the use or threat of violence to the person. § 921.141(5)(b), Fla. Stat. (1983). However, appellant contends that this factor, standing alone, is insufficient to support a sentence of death because neither of the two cited felony convictions resulted in harm to the intended victim. Appellant's argument fails for two reasons. First, as we will discuss shortly, this is not the only legitimate aggravating circumstance in this instance. Second, the resultant harm, or lack thereof, to the intended victim of a violent felony is an irrelevant consideration. In addition, the two prior felony convictions cited in the trial court's order, 1) battery upon a law enforcement officer in Florida, and 2) terroristic threat in Kansas, are both felonies involving the use or threat of violence to the person.
Appellant contests the finding, as an aggravating circumstance, that the capital felony was committed while the defendant was engaged in the commission of a burglary. § 921.141(5)(d), Fla. Stat. (1983). Burglary is defined as entering or remaining in a structure, against the will of the owner, with the intent to commit a crime therein. § 810.02, Fla. Stat. (1983). We find ample support in the record to conclude that Johnston unlawfully entered the victim's apartment with the intent to commit a theft therein. In fact, Johnston gave a statement to Investigator Mundy in which he admitted to stealing items from the victim's apartment. See Brown v. State, 473 So.2d 1260 (Fla.), cert. denied, ___ U.S. ___, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985).
Appellant contests the application of the aggravating circumstance that the murder was especially heinous, atrocious or cruel. § 921.141(5)(h), Fla. Stat. (1983). The trial court cites to the testimony of a medical examiner to support its finding that the murder was especially heinous, atrocious or cruel. The medical examiner testified that the victim, an 84-year-old woman who had retired to bed for the evening, was strangled and stabbed three times completely though the neck and twice in the upper chest. The medical examiner's testimony also revealed that it took the helpless victim three to five minutes to die after the knife wound severed the jugular vein. The court also mentioned, correctly, that the victim was in terror and experienced considerable pain during the murderous attack. The heinous, atrocious or cruel aggravating circumstance was properly applied in this instance. Cf. Wright v. State, 473 So.2d 1277 (Fla. 1985) (multiple stab wounds on the body of a 75-year-old woman) cert. denied, ___ U.S. ___, 106 S.Ct. 870, 88 L.Ed.2d 909 (1986); Brown (81-year-old semi-invalid woman beaten raped and killed by asphyxiation); Quince v. State, 414 So.2d 185 (Fla.) (severe beating, wounding, raping and manual strangulation of an 82-year-old frail woman), cert. denied, 459 U.S. 895, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982).
Lastly, appellant contends that the trial court erred in failing to find any mitigating circumstances. The trial court has broad discretion in determining the applicability of the various mitigating circumstances, so long as all of the evidence and all of the mitigating circumstances are properly considered. Lemon v. State, 456 So.2d 885 (Fla. 1984), cert. denied, 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985); White v. State, 446 So.2d 1031 (Fla. 1984). As indicated by the sentencing order and the complete record of this case, the trial court fulfilled its obligation to consider all of the evidence and all of the mitigating *872 circumstances. Nevertheless, we choose to address appellant's contention that four mitigating circumstances apply to his case.
Appellant cites several factors to support his contention that the capital felony was committed while he was under the influence of extreme mental and emotional disturbance, section 921.141(6)(b), Florida Statutes (1983), and that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. § 921.141(6)(f), Fla. Stat. (1983). In support of both of these mitigating circumstances, appellant cites to his own admission that he took L.S.D. on the night of the murder and that he suffered from mental disorders. The trial court did not err in refusing to find that the taking of L.S.D. warrants mitigation in light of the fact that Johnston gave numerous statements full of discrepancies, and, in short, his credibility was rightfully questioned. Although evidence does exist to support a finding of mitigation pursuant to section 921.141(6)(b) and (f), the trial court properly considered all of the evidence, including past mental disorders, and did not err in failing to find that Johnston's actions reached the level required to find mitigation under subsections (6)(b) and (f). The trial court's finding is supported by competent, substantial evidence. See Stano v. State, 460 So.2d 890 (Fla. 1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985); Martin v. State, 420 So.2d 583 (Fla. 1982), cert. denied, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983); Hargrave v. State, 366 So.2d 1 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979).
Johnston's age, twenty-three years at the time of the murder, does not warrant a finding of age as a mitigating factor. § 921.141(6)(g). Mason v. State, 438 So.2d 374 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). Additionally, the trial court did not err in failing to find that appellant's history of being abused by his parents rose to the level of a non-statutory mitigating circumstance.
A sentence of death is appropriate upon a finding of three aggravating and no mitigating circumstances. White v. State, 446 So.2d 1031 (Fla. 1984).
For the reasons expressed, we affirm appellant's conviction and imposition of the death sentence.
It is so ordered.
McDONALD, C.J., and BOYD, OVERTON, EHRLICH and SHAW, JJ., concur.
BARKETT, J., concurs in result only.