583 So.2d 657 (1991)
David Eugene JOHNSTON, Petitioner,
v.
Richard L. DUGGER, Respondent.
David Eugene JOHNSTON, Appellant,
v.
State of Florida, Appellee.
Nos. 73362, 74743.
Supreme Court of Florida.
June 20, 1991.
Rehearing Denied August 23, 1991.
*659 Larry Helm Spalding, Capital Collateral Representative, Martin J. McClain, Chief Asst. CCR, Mark Allen Evans, Asst. CCR; and Carlo Obligato and K. Leslie Delk, Staff Attys., Office of Capital Collateral Representative, Tallahassee, for petitioner, appellant.
Robert A. Butterworth, Atty. Gen. and Margene A. Roper and Kellie A. Nielan, Asst. Attys. Gen., Daytona Beach, for respondent, appellee.
PER CURIAM.
David Eugene Johnston appeals the trial court's denial of his motion for postconviction relief. He also petitions the Court for a writ of habeas corpus. We have jurisdiction. Art. V, §§ 3(b)(1), (9), Fla. Const. We affirm the denial of postconviction relief and deny the petition for writ of habeas corpus.
Johnston was convicted of the strangulation murder of an eighty-four-year-old woman and sentenced to death upon the jury's recommendation. The details of the crime are set forth in Johnston v. State, 497 So.2d 863 (Fla. 1986), in which this Court affirmed the conviction and death sentence. After the governor signed a warrant for his death in 1988, Johnston filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The circuit court granted a stay and conducted an evidentiary hearing.

Appeal From Denial of Motion for Postconviction Relief
In his first two claims on appeal, Johnston asserts that he was not legally competent to stand trial and that the two psychiatrists who found him competent prior to the 1984 trial conducted inadequate evaluations. He asserts that the psychiatrists only conducted brief evaluations and did not perform psychological or neurological testing. Johnston alleges that they did not have certain information about his mental illness, including that he had an IQ of 57 at the age of seven and a half, that he was receiving social security benefits for a mental disability, that he made "delusional" statements to the police, and that his attorneys were experiencing difficulty in dealing with him.
At the postconviction hearing Johnston presented the testimony of two mental health experts, Dr. Merikangas and Dr. Fleming, who examined Johnston more than four years after trial. Dr. Merikangas concluded that Johnston had been psychotic since the age of seventeen and had organic brain damage, probably from early childhood. Dr. Fleming diagnosed Johnston as suffering from organic brain syndrome, schizophrenia undifferentiated with paranoid features, and substance abuse. In the opinions of Drs. Merikangas and *660 Fleming, Johnston was not competent to stand trial and the psychiatrists who examined Johnston in 1984 conducted inadequate examinations.
The court below found that the 1984 examinations were not inadequate and that the evidence did not persuade him that his pretrial determination that Johnston was competent was incorrect. The court rejected the testimony of Drs. Merikangas and Fleming, finding that their testimony was biased, their evaluations were made long after the events in question, and their opinions were contradicted by other credible evidence and not supported by the law.
Johnston's claim that he was not competent to stand trial in 1984 is procedurally barred because he did not challenge the competency finding on direct appeal. Bundy v. State, 538 So.2d 445, 447 (Fla. 1989); Alvord v. State, 396 So.2d 184 (Fla. 1981). As to the adequacy of the pretrial examinations, we find competent, substantial evidence in the record to support the lower court's finding that the examinations were not inadequate. State v. Sireci, 536 So.2d 231, 233 (Fla. 1988). Johnston had been hospitalized several times in Louisiana for mental problems. The psychiatrists received Johnston's Louisiana mental health records after they examined Johnston, but before the competency hearing. The records did not change their opinions that Johnston was competent. Rather, they found the records to be consistent with their conclusions. In addition, the trial court had Johnston's Louisiana records before it in determining that Johnston was competent to stand trial.
Dr. Wilder, one of the 1984 psychiatrists, testified at the evidentiary hearing. Dr. Wilder pointed out that he had examined Johnston two years before on another court matter and that by reason of his study in the law library in the interim, Johnston seemed better informed on matters concerning the legal system. In finding Johnston competent to stand trial, he had determined that he had an antisocial personality. He saw no need for psychological or neurological testing. Dr. Wilder discounted the significance of an IQ of 57 at the age of seven and a half and stated that knowledge of this evaluation would not have changed his opinion concerning Johnston's competency prior to trial. It should be noted that Johnston consistently scored higher on subsequent IQ tests. Upon our review of Johnston's statements to the police we agree with the court below that the statements, taken as a whole, show that Johnston was in control of his mental faculties at the time he made them. Further, experiencing personality conflicts with one's attorney does not suggest that one is incompetent.
Johnston's reliance on Mason v. State, 489 So.2d 734 (Fla. 1986), and Sireci is misplaced. In Mason this Court held that because Mason proffered evidence of an extensive history of mental retardation, drug abuse, and psychotic behavior that may not have been considered by psychiatrists who examined him prior to trial, an evidentiary hearing was necessary to determine the adequacy of the competency evaluations. In Johnston's case, such an evidentiary hearing was held and his claim was rejected.
In Sireci, Sireci claimed that the court-appointed psychiatrist who examined him prior to trial failed to diagnose that he suffered from organic brain disorder caused by a car accident more than ten years earlier. The accident left him semiconscious and with facial paralysis. The uncontroverted testimony of defense experts at the 3.850 hearing established that Sireci currently suffered from organic brain disorder and if the disorder were present at the time of the murder, mitigating mental health evidence would have been available to him. One of the two psychiatrists who examined Sireci before trial knew of the accident and resulting coma but did not order additional tests to determine if he had organic brain disorder. Neither of the psychiatrists apparently noticed the facial paralysis. However, they both testified that based on the paralysis they observed in Sireci at the 3.850 hearing, they would have ordered testing for organic brain disorder. More importantly, however, the Court in Sireci refused to *661 substitute its judgment for that of the lower court where competent, substantial evidence supported the trial court's finding that the original psychiatric evaluations were inadequate. The rule in Sireci applies equally to the decision of the court below in this case.
We also reject Johnston's claim that counsel was ineffective for failing to provide background information necessary for an adequate evaluation. Having determined that the evaluations were not inadequate, we find no prejudice from the alleged failure to provide information. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Downs v. State, 453 So.2d 1102 (Fla. 1984).
Johnston also claims that his mental condition precluded a valid waiver of his Miranda rights and that counsel was ineffective in not seeking to suppress his statements to police officers. According to Drs. Merikangas and Fleming, Johnston's mental impairment prevented him from validly waiving his Miranda rights. The court below rejected these conclusions, finding instead that:
The evidence at the evidentiary hearing showed that defendant had been arrested a number of times previously. In one case he had been represented by an attorney, had entered a plea and had been sentenced to two years in prison. Defendant had been repeatedly warned by trial counsel not to make statements to the police both before and after he made the jailhouse statements. I further find that there was no police coercion or deception involved in obtaining any of these statements. Although according to Dr. Fleming defendant had a severe memory retention deficit, he did score a verbal IQ of 75 and a performance IQ of 101 on the WAIS-R test which would have placed him in the low average intelligence range. As in Ashley v. State, 370 So.2d 1191 (Fla. 3d DCA 1979) and Lane v. State, 353 So.2d 194 (Fla. 3d DCA 1975), the statements themselves, although bizarre in some places, showed that he was in control of his mental faculties at the time he made them. He was competent to stand trial.
Based on this evidence, I find that defendant's mental condition even where affected by alcohol or drugs did not impair his cognitive ability to understand and waive his Miranda rights. I find that he did know what an attorney was, that he did know he did not have to make statements without his attorney being present, that he did know his statements could be used as evidence against him in court, and that he did know the police were not his friends but were seeking incriminating evidence in order to convict him. I further find that he freely and voluntarily made these statements because he thought they would exonerate him, direct suspicion to some other person and result in the charges against him being dismissed.
We have reviewed the record and find competent, substantial evidence to support this conclusion. Johnston's claim in this respect fails both prongs of the test for ineffective assistance of counsel in Strickland v. Washington.
Johnston makes other claims of ineffectiveness of trial counsel. He asserts that counsel failed to investigate his alcohol and drug abuse and his abnormal mental condition which rendered him incapable of forming the requisite specific intent. He maintains that their failure to pursue insanity, voluntary intoxication, or diminished capacity defenses was ineffective. According to the hearing testimony, counsel felt that the defense of reasonable doubt/identity was more plausible than the defenses of insanity, voluntary intoxication, or diminished capacity. The evidence substantially contradicted the latter three defenses. Items stolen from the victim's apartment were secreted on a nearby construction site where defendant had worked. Defendant reported the finding of the victim's body. He made statements to the police and sent a bogus confession from another person in an attempt to focus police investigation on some other unidentified suspect. Johnston consistently maintained that someone else committed the *662 crime. Additionally, counsel was faced with the findings of two court-appointed experts who determined that Johnston was competent. Johnston refused to cooperate with a third expert or to allow the presentation of an insanity defense because he feared placement in a mental hospital. He thought he would be acquitted. Furthermore, in order to present these defenses, evidence would have had to be presented in the defendant's case, and counsel felt that the tactical advantage of having opening and closing arguments would be more beneficial. We agree with the court below that the decision not to pursue those defenses was reasonable trial strategy and not ineffective. See Thompson v. Wainwright, 784 F.2d 1103 (11th Cir.1986) (counsel not ineffective regarding investigation of insanity defense where counsel arranged for two psychiatric evaluations of defendant, one psychiatrist found defendant competent, and defendant failed to cooperate with the other).
Johnston also contends that counsel failed to investigate and present mitigating evidence of his mental health problems and his abused childhood in the penalty phase of trial. This claim is without merit. At the outset, it should be noted that Johnston's trial attorney testified at the rule 3.850 hearing that Johnston's family was unwilling to assist Johnston at the time of the trial. Notwithstanding, Johnston's stepmother testified during the penalty phase about Johnston's history of mental problems and his low intellectual functioning and that he was the product of a broken home; that his mother neglected, rejected, and abused him; and that his father physically abused him. She also testified that his father's death when Johnston was eighteen greatly affected him. In addition, Ken Cotter, Johnston's former attorney, testified that Johnston had tremendous mood swings, would say things that did not make sense, and received a social security disability check which Cotter distributed to him from an escrow account because Johnston was unable to administer the money. The court charged the jury on the two statutory mental health mitigating factors and trial counsel argued them to the jury. Defense counsel obtained the appointment of a third mental health expert, whom they hoped to use in the penalty phase, but Johnston refused to cooperate with the expert. Counsel did not introduce Johnston's Louisiana hospital records in the penalty phase. However, we find that decision to be reasonable trial strategy given the negative aspect of the records. They contain numerous references to Johnston's arrests and convictions; his suicidal, homicidal, and abnormal sexual tendencies; his combative, threatening, and antisocial acts; past drug and alcohol abuse; and his dangerousness. Given these facts, counsel's performance was reasonable and not ineffective.
We reject without discussion Johnston's additional claims of ineffective assistance based on: (1) counsel's failure to object to Williams[1] rule evidence and/or ask for a curative instruction; (2) the failure to move for a new trial after testimony about a luminol test; (3) the failure to voir dire jurors adequately and to object to certain jurors; (4) the failure to request court-appointed forensic experts to aid in the defense; and (5) the lack of preparation to argue a motion for new trial.
The remaining claims are without merit or are procedurally barred because they have been or should have been raised on direct appeal.[2]

*663 Petition for Habeas Corpus

Petitioner raises the following five claims in his petition:
(1) The prosecutor and the court misinformed the jury concerning its proper role in sentencing.
(2) The "heinous, atrocious, or cruel" aggravating circumstance was applied in violation of the eighth and fourteenth amendments.
(3) The burden of proof was improperly shifted to the defendant to establish that the mitigating circumstances outweighed the aggravating circumstances.
(4) The death sentence rested upon an unconstitutional aggravating circumstance.
(5) The court failed to consider nonstatutory mitigating factors.
All of these claims are duplicative of claims raised in the motion for postconviction relief. All of the claims are procedurally barred because they were raised or should have been raised on direct appeal. Johnston's claim that appellate counsel was ineffective for failing to raise certain of these claims is without merit.
Accordingly, we affirm the denial of 3.850 relief and deny the petition for writ of habeas corpus.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, J., concurs in result only.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[2] The remaining claims are:

(1) The aggravating circumstance of heinous, atrocious, or cruel was applied in violation of the eighth and fourteenth amendments.
(2) The death sentence rests on an unconstitutional automatic aggravating circumstance (i.e., the felony murder that formed the basis for conviction).
(3) The trial court in sentencing Johnston improperly considered his prior conviction in Kansas for communication of a threat.
(4) The trial court refused to find mitigating factors established in the record.
(5) The sentencing proceeding improperly shifted the burden to the defendant to show that death was an inappropriate penalty.
(6) The prosecutor and court misled and misinformed the jury concerning its proper role in sentencing.
(7) The jury improperly considered victim impact information.
We also deny for lack of merit Johnston's claims of ineffective assistance of counsel related to these claims.