789 So.2d 262 (2001)
David Eugene JOHNSTON, Petitioner,
v.
Michael W. MOORE, Secretary, Florida Department of Corrections, Respondent.
No. SC00-1024.
Supreme Court of Florida.
April 12, 2001.
Rehearing Denied June 15, 2001.
*263 Gregory C. Smith, Capital Collateral Counsel, and Bret Strand, Assistant CCCNR, Office of Capital Collateral Regional CounselNorthern Region, Tallahassee, FL, for Petitioner.
Robert A. Butterworth, Attorney General, Carolyn M. Snurkowski, Assistant Deputy Attorney General, Tallahassee, Florida, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, FL, for Respondent.
PER CURIAM.
David Eugene Johnston, a prisoner under sentence of death, petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(9), Fla. Const. For the reasons set forth below, we deny Johnston's petition for habeas corpus.

BACKGROUND
Johnston was convicted and sentenced to death for the 1983 murder of eighty-four-year-old Mary Hammond. The facts in this case are set forth in greater detail in Johnston v. State, 497 So.2d 863 (Fla. 1986). The relevant facts are as follows:
At approximately 3:30 a.m. on November 5, 1983, David Eugene Johnston called the Orlando Police Department, identified himself as Martin White, and told the police "somebody killed my grandma" at 406 E. Ridgewood Avenue. Upon their arrival, the officers found the dead body of 84 year old Mary Hammond. The victim's body revealed numerous stab wounds as well as evidence of manual strangulation. The police arrested Johnston after noticing that his clothes were blood-stained, his face was scratched and his conversations with the various officers at the scene of the crime revealed several discrepancies as to his account of the evening's events.
Id. at 865. The jury convicted Johnston of first-degree murder and recommended death by a vote of eight to four. The trial court followed the jury's recommendation *264 and sentenced Johnston to death.[1] We affirmed Johnston's conviction and sentence on direct appeal. See id. at 872.
After the Governor signed his death warrant in 1988, Johnston filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Upon granting a stay and conducting an evidentiary hearing, the trial court denied Johnston's motion for postconviction relief. We affirmed the trial court's denial of postconviction relief and also denied Johnston's petition for writ of habeas corpus. See Johnston v. Dugger, 583 So.2d 657 (Fla.1991). In so doing, this Court rejected Johnston's claim that trial counsel was ineffective for failing to investigate and present mitigating evidence of Johnston's mental health problems and abusive childhood. In particular, this Court stated:
Johnston also contends that counsel failed to investigate and present mitigating evidence of his mental health problems and his abused childhood in the penalty phase of trial. This claim is without merit. At the outset, it should be noted that Johnston's trial attorney testified at the rule 3.850 hearing that Johnston's family was unwilling to assist Johnston at the time of the trial. Notwithstanding, Johnston's stepmother testified during the penalty phase about Johnston's history of mental problems and his low intellectual functioning and that he was the product of a broken home; that his mother neglected, rejected, and abused him; and that his father physically abused him. She also testified that his father's death when Johnston was eighteen greatly affected him. In addition, Ken Cotter, Johnston's former attorney, testified that Johnston had tremendous mood swings, would say things that did not make sense, and received a social security disability check which Cotter distributed to him from an escrow account because Johnston was unable to administer the money. The court charged the jury on the two statutory mental health mitigating factors and trial counsel argued them to the jury. Defense counsel obtained the appointment of a third mental health expert, whom they hoped to use in the penalty phase, but Johnston refused to cooperate with the expert. Counsel did not introduce Johnston's Louisiana hospital records in the penalty phase. However, we find that decision to be reasonable trial strategy given the negative aspect of the records. They contain numerous references to Johnston's arrests and convictions; his suicidal, homicidal, and abnormal sexual tendencies; his combative, threatening, and antisocial acts; past drug and alcohol abuse; and his dangerousness. Given these facts, counsel's performance was reasonable and not ineffective.
Id. at 662.
Johnston next filed a petition for writ of habeas corpus in federal district court. The district court determined that the heinous, atrocious, or cruel (HAC) jury instruction given in Johnston's case was unconstitutionally vague under Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). The district court also concluded that it could not determine whether the rejection by this Court of Johnston's HAC claim was based on the independent state ground that it was not preserved for appeal. Thus, the district court ruled:
Accordingly, because only the Florida courts can determine the proper approach *265 to [Johnston's] sentencing, the writ of habeas corpus will be conditionally granted, within sixty (60) days from the date of this Order, unless the State of Florida initiates appropriate proceedings in state court. Because a new sentencing hearing before a jury is not constitutionally required, the State of Florida may initiate whatever state court proceedings it finds appropriate, including seeking a life sentence or the performance of a reweighing or harmless error analysis by the Florida Supreme Court.
Johnston v. Singletary, No. 91-797-CIV-ORL-22, slip op. at 28 (M.D.Fla. Sept. 16, 1993). In response to the federal district court's order, the State requested this Court to clarify its prior rejection of Johnston's HAC claim. We did so in Johnston v. Singletary, 640 So.2d 1102 (Fla.1994), concluding that (1) Johnston's HAC claim was procedurally barred and (2) even if the issue was not procedurally barred, the erroneous instruction would not have affected the jury's recommendation or the trial court's sentence. See id. at 1104. The federal district court subsequently evaluated this Court's decision and denied federal habeas relief as to all claims.
In the interim, Johnston filed another motion for postconviction relief in the trial court. The trial court denied the postconviction motion without an evidentiary hearing on the basis that it was time-barred because it had been filed more than two years from the date of this Court's opinion in Johnston v. State, 497 So.2d 863 (Fla. 1986). Alternatively, the trial court held that even if the motion was not time-barred, the claims contained therein should be denied as an abuse of process because they were or should have been raised on direct appeal or in previous collateral proceedings. We affirmed the trial court's denial of postconviction relief and also denied Johnston's habeas petition. See Johnston v. State, 708 So.2d 590 (Fla. 1998).
In December 1998, the Eleventh Circuit Court of Appeals affirmed the federal district court's order denying Johnston's habeas petition. See Johnston v. Singletary, 162 F.3d 630 (11th Cir.1998). The court specifically analyzed and rejected Johnston's claim alleging that trial counsel was ineffective at the penalty phase for failing to present available evidence in support of statutory and nonstatutory mitigating circumstances. In so doing, the court addressed Johnston's contention that trial counsel failed to call as witnesses or obtain affidavits from Johnston's family members, who would have testified as to the abuse that characterized his childhood. The court recognized that trial counsel did elicit testimony from Johnston's stepmother, Corinne Johnston, who testified in some detail about the abuse suffered by Johnston while growing up and the lasting effects of this mistreatment. See id. at 639. The court noted that even assuming other family members had been available and willing to testify, their testimony would have confirmed and reiterated the testimony already offered by Johnston's stepmother. See id. Thus, the court stated, "Although we do not discount the value of cumulative testimony in the penalty phase of a capital trial, we cannot say that counsel's decision to present some, but not all, available mitigating evidence with respect to Johnston's family historyparticularly when it appears that those individuals who were not called to testify would have testified to essentially the same events Corrine [sic] Johnston described in her testimony constituted ineffective or deficient performance." Id.
The court also addressed Johnston's assertion that trial counsel knew Johnston was mentally impaired and yet, for no *266 strategic reason, failed to conduct further necessary investigation, obtain expert testimony regarding his mental state, or object to aspects of the State's expert psychiatric testimony. The court noted that Kenneth Cotter, an attorney who previously represented Johnston in various matters, testified that Johnston suffered severe mood swings. See id. at 639-40. Cotter also testified Johnston regularly received a social security disability check that he dispersed to Johnston from an escrow account because Johnston was unable to administer his money. See id. The court also reiterated that Johnston's stepmother testified as to the circumstances surrounding Johnston's upbringing and to the effect it had on Johnston. See id. at 640. Moreover, the court determined that under the particular facts of the case Johnston's attorneys were not ineffective for failing to obtain or present mental health expert testimony at the penalty phase since counsel did attempt to retain a mental health expert to perform an evaluation that would reflect Johnston's mental instability, but Johnston refused to cooperate; the record did not show that trial counsel could have obtained favorable testimony even in the absence of Johnston's cooperation; and Johnston's medical records contained a substantial amount of damaging information relating to Johnston's criminal history that trial counsel expressly sought to avoid introducing. See id. at 639-42. The United States Supreme Court denied Johnston's petition for writ of certiorari on October 4, 1999. See Johnston v. Moore, 528 U.S. 883, 120 S.Ct. 198, 145 L.Ed.2d 167 (1999).

PRESENT PETITION
In the present habeas petition, Johnston contends that this Court applied an incorrect standard in reviewing his claim alleging ineffective assistance of counsel during the penalty phase in its 1991 opinion. See Johnston v. Dugger, 583 So.2d 657 (Fla. 1991). Specifically, Johnston argues that this Court improperly deferred to the trial court on mixed questions of law and fact, rather than conducting a de novo review. In light of Stephens v. State, 748 So.2d 1028 (Fla.1999), Johnston asserts that this Court should reconsider its prior denial of his ineffective assistance claim.

ANALYSIS
The determinative issue in this case is whether Stephens constitutes a change in the law requiring retroactive application. As noted in State v. Glenn, 558 So.2d 4 (Fla.1990), any determination of whether a change in the law requires retroactive application should be decided upon traditional principles pertaining to changes in decisional law as set forth in Witt v. State, 387 So.2d 922 (Fla.1980). See Glenn, 558 So.2d at 6; see also McCuiston v. State, 534 So.2d 1144, 1146 (Fla. 1988). Under Witt, to warrant retroactive application, a change of law must: (1) emanate from the United States Supreme Court or the Florida Supreme Court; (2) be constitutional in nature; and (3) have fundamental significance.[2]See Witt, 387 So.2d at 929-30.
As this Court recognized in Witt, however, not every change in decisional law warrants retroactive application.

*267 In contrast to these jurisprudential upheavals are evolutionary refinements in the criminal law, affording new or different standards for the admissibility of evidence, for procedural fairness, for proportionality review of capital cases, and for other like matters. Emergent rights in these categories, or the retraction of former rights of this genre, do not compel an abridgement of the finality of judgments. To allow them that impact would, we are convinced, destroy the stability of the law, render punishments uncertain and therefore ineffectual, and burden the judicial machinery of our state, fiscally and intellectually, beyond any tolerable limit.
Id. at 929-30. When deciding whether to apply a decision retroactively, "the fundamental consideration is the balancing of the need for decisional finality against the concern for fairness and uniformity in individual cases." State v. Callaway, 658 So.2d 983, 986 (Fla.1995), receded from in part on other grounds, Dixon v. State, 730 So.2d 265 (Fla.1999); see also Glenn, 558 So.2d at 6-7.
Applying the principles of Witt, we conclude that Stephens was not a change in the law that should have retroactive application. Rather, this Court in Stephens sought to clarify any confusion resulting from the use of different language in various opinions analyzing ineffective assistance of counsel claims. In so doing, this Court reaffirmed its prior decision in Rose v. State, 675 So.2d 567 (Fla.1996), wherein this Court stated that an ineffective assistance of counsel claim is a mixed question of law and fact, subject to plenary review based on Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[3]See Stephens, 748 So.2d at 1032; see also Rose, 675 So.2d at 571. "Thus, under Strickland, both the performance and prejudice prongs are mixed questions of law and fact, with deference to be given only to the lower court's factual findings." Stephens, 748 So.2d at 1033.
In fact, we find this same standard of review was applied when we affirmed the denial of Johnston's motion for postconviction relief in Johnston v. Dugger, 583 So.2d 657 (Fla.1991). In Johnston, we independently reviewed the trial court's legal conclusions as to the alleged ineffectiveness of Johnston's trial counsel. See id. at 662. That being so, there is no legal basis to reconsider our prior decision. Accordingly, we deny the petition for habeas corpus.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] The trial court found no mitigating circumstances and three aggravating factors: (1) prior violent felony; (2) offense committed during the course of a felony; and (3) heinous, atrocious, or cruel. See id. at 871.
[2] Decisions which have fundamental significance generally fall into two broad categories: (1) those decisions which place beyond the authority of the state the power to regulate certain conduct or impose certain penalties; and (2) decisions which are of sufficient magnitude to necessitate retroactive application under the threefold test of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). See Witt, 387 So.2d at 929.
[3] As the Supreme Court explained in Strickland:

Ineffectiveness is not a question of "basic, primary, or historical fac[t]." Rather, like the question whether multiple representation in a particular case gave rise to a conflict of interest, it is a mixed question of law and fact. Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement ... both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.
466 U.S. at 698, 104 S.Ct. 2052 (citations omitted).