626 So.2d 1316 (1993)
Frank VALDES, Appellant,
v.
STATE of Florida, Appellee.
No. 76569.
Supreme Court of Florida.
September 9, 1993.
Rehearing Denied December 3, 1993.
*1318 Joseph S. Karp, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Celia A. Terenzio, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Frank Valdes appeals his convictions of first-degree murder and numerous lesser offenses and his sentence of death. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
Around 1:30 p.m. on June 24, 1987, Officers Turner and Griffis transported James O'Brien, a state prison inmate, to a dermatologist's office for an examination. After Griffis pulled the prison van into the parking lot near the doctor's office, William Van Poyck came up to the van and aimed a pistol at Turner's head. Van Poyck ordered Turner to exit the van, and Frank Valdes went to the driver's side of the van to get Griffis. Van Poyck took Turner's gun and ordered him to get under the van. Griffis exited the van and was forced to the back of the vehicle, where he was shot three times, once in the head and twice in the chest. Turner could not tell whether Van Poyck or Valdes actually pulled the trigger. After Griffis was shot, Turner was forced to get up from under the van and look for the keys. When the search proved unsuccessful, Valdes fired several shots at a padlock on the van in an attempt to free O'Brien. One of the shots ricocheted off the van and struck Turner, causing him minor injuries. Van Poyck then pointed his gun at Turner's head, said "you're a dead man," and pulled the trigger, but the gun did not fire. Turner fled the scene when Van Poyck turned his attention to Valdes, who was smashing one of the van's windows.
Van Poyck and Valdes then ran to their Cadillac, which was parked in an adjacent parking lot. As they headed toward their car, Van Poyck used the butt of his gun to shatter the windshield of another car that had pulled up to the scene. Valdes and Van Poyck then got into the Cadillac, Valdes driving, and sped from the parking lot. The West Palm Beach Police Department responded shortly thereafter to a call from witnesses at the doctor's office. During the subsequent chase Van Poyck leaned out the car window and fired numerous shots at the police cars in pursuit, hitting four of them.
Valdes eventually lost control of the car and crashed into a tree. Van Poyck was tried first, found guilty of numerous offenses, *1319 and sentenced to death. His convictions and sentences were affirmed on direct appeal. Van Poyck v. State, 564 So.2d 1066 (Fla. 1990), cert. denied, 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 270 (1991).
Valdes was found guilty of first-degree murder, armed robbery, seven counts of attempted first-degree murder, aggravated assault, and aiding in an attempted escape. The jury recommended a sentence of death by a vote of eight to four, and the trial court followed this recommendation.
Valdes' first argument on appeal relates to his motion to dismiss trial counsel. If a defendant alleges that his counsel is incompetent and requests that counsel be discharged, the trial court must "make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant." Hardwick v. State, 521 So.2d 1071, 1074 (Fla.) (quoting Nelson v. State, 274 So.2d 256, 259 (Fla. 4th DCA 1973)), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988). Valdes argues that the trial court here failed to conduct a proper inquiry into the effectiveness of Valdes' counsel and erred in denying Valdes' motion to dismiss his attorneys.
Craig Boudreau and Fredrick Susaneck were appointed to represent Valdes in August 1989. Trouble started in March 1990, when Valdes had an outburst at a hearing, said Boudreau was too busy with another case to pay attention to this one, and stated he did not recognize Boudreau as his attorney. In May, just days before trial was scheduled to begin, Valdes filed a written motion to dismiss counsel, stating that they had a long-standing conflict with him over the appropriate defense and that they were not adequately prepared for trial. He also asserted that they had threatened him and hit him during a meeting at the jail. Valdes noted that he had filed criminal charges against his attorneys and was considering pursuing a civil complaint and a complaint with the American Bar Association. The court reserved ruling on this motion and asked for affidavits from the attorneys in response to the allegations. These affidavits reflect that both attorneys denied the alleged violence or even having a heated discussion on the day of the alleged battery.
A hearing was held on Valdes' motion at the beginning of the trial. The judge began the hearing by telling Valdes he would hear from him first. Valdes asserted that he was constructively without counsel, stated he refused to answer any questions until an attorney was appointed for him, and began complaining about the media coverage of the previous hearing. The judge interrupted Valdes and let the State call their three witnesses, each of whom testified that Valdes did not appear upset when he left the meeting with his attorneys and said nothing to them about any attack.
After each witness's direct examination, the court gave Valdes an opportunity to cross-examine, to which Valdes responded by objecting to the proceeding because he had no attorney to represent him. After the third witness testified, Valdes physically attacked him. A recess was taken, and Valdes was given the opportunity to resume the hearing. Valdes responded by calling the proceeding a "farce" and a "sham" and swearing at the judge. Valdes was removed from the courtroom again and the hearing continued. The judge denied the motion to dismiss counsel, finding that Valdes had made it quite clear he was not capable of representing himself and that his own conduct precluded the court from further inquiry. The judge also found that Valdes had engaged in a purposeful and willful course of conduct to frustrate the trial, and that if the judge allowed withdrawal at this point there was no doubt he would be faced with the same situation down the line with different attorneys.
We find that the trial court conducted an adequate inquiry, gave Valdes the opportunity to state his reasons for wanting new counsel, and properly denied Valdes' motion when he refused to explain his allegations of ineffectiveness. It is obvious that Valdes was given every opportunity to establish his claim that counsel was ineffective and chose not to *1320 do so.[1] On the record here, there was no basis for a finding of ineffective representation. Cf. Bowden v. State, 588 So.2d 225, 230 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1596, 118 L.Ed.2d 311 (1992).
It is also readily apparent from the record in this case that Valdes was abusing the system in an effort to delay his trial. Boudreau and Susaneck were Valdes' fifth and sixth attorneys. Valdes' second[2] attorney, Nelson Bailey, represented him for about three months before withdrawing due to a conflict with Valdes. At the hearing on Bailey's motion to withdraw, Valdes stated he had a problem with Bailey which he did not want to divulge. The judge gave him the benefit of the doubt and allowed the withdrawal, but warned Valdes that he would not let him keep changing lawyers for no reason.
Attorneys Mark Wilensky and Marc Goldstein were appointed to replace Bailey in late January 1988. After two unsuccessful motions[3] to dismiss these attorneys, Valdes presented a third motion stating that he had filed a civil suit against his attorneys as well as a complaint with The Florida Bar. Valdes refused to discuss the specific problems he was having with counsel. At the hearing on this motion, the attorneys noted that Valdes refused to talk with them at all, and Goldstein stated that Valdes was the most difficult client he had ever had. The court granted the motion to dismiss counsel, appointing Boudreau and Susaneck in their place.
In the motion to dismiss counsel at issue here, Valdes raised the same vague allegations of disagreement with the line of defense that he had raised as to his previous attorneys and again refused to discuss the specific basis for his allegations of ineffectiveness. To ensure the success of his motion, Valdes heightened the allegations to a completely unsubstantiated accusation of battery and filed charges against the attorneys. As we have stated previously in a similar context, we will not allow a difficult defendant "to completely thwart the orderly processes of justice." Waterhouse v. State, 596 So.2d 1008, 1014 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 418, 121 L.Ed.2d 341 (1992). The trial court's finding that allowing the withdrawal of Boudreau and Susaneck would only have led to the same problem with any attorneys who replaced them is completely supported by the record and fully justified a denial of Valdes' motion.
We also reject Valdes' claim that the trial court erred in failing to conduct a Faretta[4] inquiry and explain to Valdes his right to represent himself. Valdes never unequivocally asked to represent himself, and in fact he made it clear throughout the various problems with his attorneys that he did not want to represent himself. Valdes was told at previous hearings that he would not be allowed to get new court-appointed counsel whenever he wanted, and if he fired counsel for no reason he would have to represent himself. Any further inquiry into this area at the last hearing was thwarted by Valdes' conduct in attacking a witness. Further, as the trial court held, this action made it perfectly clear that Valdes was not capable of representing himself.
In a related claim, Valdes argues that the trial court erred in failing to appoint disinterested counsel to represent him at the effectiveness hearing. This hearing was conducted to give the trial court a chance to explore the allegations of ineffectiveness with *1321 the defendant and his current attorneys. Hardwick, 521 So.2d at 1074. Until this counsel was discharged, Valdes did not have the right to the appointment of a new attorney. Taking Valdes' argument to its logical conclusion, the appointment of new counsel would be required every time a defendant seeks to discharge his appointed counsel. Such a requirement would only serve to further delay the proceedings. As was the case here,[5] counsel is still protecting the interests of the defendant at an effectiveness hearing, although admittedly there is a burden on the defendant himself to speak up, since he is the one alleging errors by his counsel.
Valdes next claims the trial court erred in failing to excuse two prospective jurors, Ms. Stelzel and Ms. Garko, for cause. Having reviewed these jurors' statements during voir dire, we conclude that the trial court did not abuse its discretion in denying Valdes' motions to strike them for cause. The record demonstrates that both of these jurors could lay aside any bias or prejudice, render a verdict based solely on the evidence, and follow the instructions of the court. Lusk v. State, 446 So.2d 1038, 1041 (Fla.), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). See also Davis v. State, 461 So.2d 67, 70 (Fla. 1984), cert. denied, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985); Fitzpatrick v. State, 437 So.2d 1072, 1075-76 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1328, 79 L.Ed.2d 723 (1984).
In his next point, Valdes argues that his due process rights were violated when he was not allowed to attend a portion of the jury selection. After physically assaulting the witness at the effectiveness hearing, Valdes was removed from the courtroom.[6] A recess was taken, and Valdes was brought back before the judge, asked if he would conduct himself in an appropriate manner, and warned that if he would not do so he would not be allowed in the courtroom. Valdes responded to this inquiry by condemning the proceeding as a "farce" and a "sham," then swearing at the judge.
Valdes was taken out of the courtroom and placed in an adjacent room where he could still hear the proceedings. He was told if he wanted to talk to the judge or his counsel he could have the bailiff write a note for him. Valdes concedes that his removal was an appropriate action at that time, but argues that he should have been allowed back into the courtroom sooner than he was.[7]
The record reflects that on four occasions after his removal the judge gave Valdes an opportunity to come back to court if he promised to conduct himself appropriately. Three times Valdes responded by condemning the proceedings, and once he relayed a message through the bailiff stating he did not want to come into court and be present. While it is impossible to evaluate Valdes' demeanor at these times by reviewing a written record, it is obvious that the trial judge was fully conscious of Valdes' right to be present and gave him every opportunity to be present if he could behave. Until the judge was satisfied that Valdes would not be a danger or disrupt the proceedings further, he was justified in keeping Valdes out of the courtroom. Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). While Valdes argues he could have been placed in the courtroom and shackled, we have long recognized that shackling is inherently prejudicial, and the constitution does not require that this method of controlling a defendant be chosen over removal. Trial judges "must be given sufficient discretion to meet the circumstances of each case" where a defendant disrupts the proceedings. Id. at 343, 90 S.Ct. at 1061. We find no abuse of discretion.
*1322 We also reject Valdes' argument that he was not given adequate means of communication with his attorneys. Myles v. State, 602 So.2d 1278 (Fla. 1992), is distinguishable because here Valdes' absence from the courtroom was caused by his own conduct. We also note that throughout the trial Valdes refused to talk to his attorneys or even recognize them as his counsel, and it is therefore extremely doubtful he had any desire to communicate with them while he was removed from the courtroom. Further, while defense counsel asked that Valdes be given a pencil and paper so that he could write messages himself rather than having a bailiff write messages, the court refused this request out of concern that a pencil could be used by Valdes as a weapon. We find under the circumstances of this case that such concern was justified, and the court acted within its discretion in denying the request.
Valdes next attacks his convictions for armed robbery, aiding escape, and six counts of attempted murder. We find his arguments on these issues to be without merit[8] and having reviewed the record find substantial competent evidence to support each conviction.
Valdes also argues that the trial court erred in denying his motion for judgment of acquittal as to aggravated assault. This conviction involves Van Poyck's attack of Dr. Brown. Brown pulled up in his car while Van Poyck and Valdes were at the prison van. After Officer Griffis was shot, Valdes walked by Brown's car. Van Poyck came up to the car, pointed his pistol at Brown and his wife, then turned the gun around and smashed Brown's windshield with the handle of the gun.
A defendant may not be convicted of a crime in which he does not participate where the crime is "`outside of and foreign to, the common design' of the original felonious collaboration." Parker v. State, 458 So.2d 750, 752 (Fla. 1984), cert. denied, 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985). That is, a defendant is exonerated from those acts committed by a co-felon which are outside of the original plan or design. However, "[o]ne who participates with another in a common criminal scheme is guilty of all crimes committed in furtherance of that scheme regardless of whether he or she physically participates in that crime." Jacobs v. State, 396 So.2d 713, 716 (Fla. 1981). The key question in these cases is "whether the extra criminal act done by one's confederate is in furtherance or prosecution of the initial common criminal design." Hampton v. State, 336 So.2d 378, 380 (Fla. 1st DCA), cert. denied, 339 So.2d 1169 (Fla. 1976). See also Beasley v. State, 360 So.2d 1275, 1278 (Fla. 4th DCA 1978) (An aider and abettor is guilty even if "the common purpose was not to commit the particular crime which was committed. The aider is guilty of any other crime committed by the other person in pursuance of the common purpose or as a natural or probable consequence thereof.").
While Valdes did not actually participate in the aggravated assault, this action by Van Poyck was certainly not foreign to the common design of aiding O'Brien's escape from custody. Sufficient evidence was presented to the jury from which it could infer that Van Poyck smashed Brown's windshield in order to prevent Brown from following them as they made their escape from the scene, and it was proper for the jury to conclude that the aggravated assault was within the common criminal scheme. There was substantial competent evidence to support this conviction.
Finally, Valdes argues that the trial court erred in admitting the testimony of Officer Gaglione. Gaglione, an officer at the *1323 Palm Beach County Jail, testified that he overheard a conversation between Valdes and another inmate wherein Valdes stated the murder was planned beforehand and Griffis was put "to his knees." On recross-examination, Gaglione specifically testified that Valdes stated "they" planned the murder, not "I" or "we." On redirect examination by the State, Gaglione testified that Valdes had said "they" brought Griffis to his knees. Upon further State questioning, Gaglione said Valdes did not say "we" but "they  referring to someone other than himself."
Valdes now argues that this testimony was inadmissible because it misled the jury, since Valdes' statement was in fact exculpatory but the State used it against him. This argument was not raised below and is therefore barred here. Further, as defense counsel pointed out in closing argument, this testimony did not help the State's case at all, and if anything affirmatively harmed it. Accordingly, any error was harmless beyond a reasonable doubt.
Having reviewed the record, we find that there was substantial competent evidence to support the conviction of first-degree murder, and that conviction is affirmed.
Turning to the penalty phase of the trial, Valdes argues that the trial court erred in failing to grant a continuance of the penalty phase proceedings. The decision to grant or deny a continuance is within the sound discretion of the trial court. Magill v. State, 386 So.2d 1188, 1189 (Fla. 1980), cert. denied, 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981). Here, counsel sought a continuance because they were unable to secure the presence of some of Valdes' family members and because they wanted to further investigate possible mental mitigation. Their efforts thus far had been thwarted by Valdes' refusal to speak to their psychologist.
The penalty phase was set to begin one week after the verdict was returned. Accordingly, not only did counsel have ten months before trial to prepare for the penalty phase, they also had a full week after the guilt phase was over. We find no abuse of discretion under these circumstances.
Valdes also argues that the trial court found an improper aggravating factor and erred in failing to find several mitigating factors. In its sentencing order, the trial court found the following aggravating circumstances: (1) Valdes was previously convicted of several violent felonies; (2) Valdes knowingly created a great risk of death to many persons; (3) the murder was committed to effect an escape from custody and to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws; and (4) the murder was cold, calculated, and premeditated.[9] The court found no statutory mitigating factors but did find that Valdes' father was an alcoholic and occasionally physically abusive, that Valdes was in a serious car accident at age eleven, that he spent one year in a military boarding school, that he came from a broken home, and that he had a difficult birth. The court found that "none of [these circumstances] begin to set forth sufficient mitigating circumstances to outweigh" the aggravators.
Valdes argues that the State failed to prove beyond a reasonable doubt that the murder was cold, calculated, and premeditated. In order to establish this aggravator, the State must show a heightened level of premeditation establishing that the defendant had a careful plan or prearranged design to kill. Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Here, while it is evident the escape was well planned, there is no evidence that Valdes had a plan to actually kill anyone. The evidence is entirely consistent with an escape attempt that got out of hand. While a plan to kill could be inferred from Officer Gaglione's testimony that Valdes admitted the murder was planned beforehand, Gaglione specifically testified that Valdes stated "they" had planned the murder, referring to someone other than himself. On the facts of this case there was insufficient evidence to prove that this murder was cold, calculated, and premeditated beyond a reasonable doubt. Cf. Gore v. State, 599 So.2d 978, 987 (Fla.), cert. *1324 denied, ___ U.S. ___, 113 S.Ct. 610, 121 L.Ed.2d 545 (1992); Hill v. State, 515 So.2d 176, 179 (Fla. 1987), cert. denied, 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988).
As to mitigation, Valdes argues that the trial court should have found two statutory mitigating factors  that Valdes acted under the substantial domination of Van Poyck at the time of the murder and that he was an accomplice whose participation was relatively minor.[10] The trial court specifically rejected both mitigating factors.
A trial court may reject a defendant's claim that a mitigating circumstance has been established as long as the record contains substantial competent evidence to support the court's rejection of the proposed mitigator. Nibert v. State, 574 So.2d 1059, 1062 (Fla. 1990). Here, the evidence offered to support Valdes' claim of substantial domination by Van Poyck was Valdes' former girlfriend's testimony that Valdes went with Van Poyck the morning of the murder to do him a favor, that they had moved to Fort Lauderdale to get away from Van Poyck, and that Van Poyck was dominant over Valdes. However, Valdes clearly participated equally in the escape attempt and murder. Valdes provided the murder weapon, and he was the one who forced Griffis from the van and took him to the back of the vehicle, where he was executed. The testimony indicated that Valdes and Van Poyck acted in concert during the entire episode. Contrary to Valdes' argument, the fact that we previously characterized Van Poyck as the major participant in this incident does not mean Valdes' participation was minor. We find substantial competent evidence to support the trial court's rejection of these proposed mitigators. Cf. White v. State, 403 So.2d 331, 339 (Fla. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983).
Valdes also argues that the trial court should have found that he acted under the influence of an emotional disturbance. We reject this argument, as even Valdes concedes that this mitigator was not adequately developed at trial.
In a related claim, Valdes argues that counsel was ineffective at the penalty phase for failing to conduct an adequate investigation and present available mitigating evidence. On this record, we find this claim to be speculative and without merit. However, a claim of ineffective assistance of trial counsel is more appropriately raised in a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, and if he so desires Valdes is free to raise this claim in such a motion and more fully develop the record.
Having overturned the aggravating factor that the murder was cold, calculated, and premeditated, we must determine whether the erroneous finding of this factor was harmless. In light of the circumstances of this crime, the three remaining aggravators, and the insignificant mitigation, we hold that the erroneous finding of this factor was harmless error beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986).
For the reasons expressed, we affirm Valdes' convictions and sentences, including his sentence of death.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Contrary to Valdes' argument, the trial court was not required to continue the ineffectiveness hearing when Valdes was finally returned to the courtroom.
[2] Initially, the public defender's office was appointed to represent Valdes, but had to withdraw because the office was already representing a prison inmate listed as a State witness.
[3] The first motion, filed in December 1988, alleged that the attorneys were not acting in Valdes' best interests, had their own ideas about what his defense should be, and were not properly investigating Valdes' defense strategy, allegedly because of the hostile political atmosphere surrounding the case.

The second motion, filed in January 1989 only days before trial was scheduled to begin, alleged that Valdes' attorneys had violated the attorney-client privilege. During the hearing on this motion, the attorneys noted that Valdes now refused to talk to them and asked to withdraw. This request was denied.
[4] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[5] For example, while Valdes' counsel did not cross-examine the State witnesses in an attempt to get them to say Valdes was assaulted, counsel did object to the testimony of the defense investigator and obtained a cautionary instruction that the investigator not disclose privileged information as to the content of the discussions at the meeting at which Valdes was supposedly assaulted.
[6] Contrary to Valdes' contention, this was not the first time he was disruptive in court. Valdes was warned about his behavior at a status check hearing held March 7, 1990, where he swore at his attorney.
[7] Valdes was removed from the courtroom on May 29 and allowed back in the courtroom when court began on May 31.
[8] Specifically, we find (1) that it was proper to convict Valdes of both felony murder and the underlying felony, see State v. Enmund, 476 So.2d 165 (Fla. 1985); (2) that it was within the State's discretion to charge Valdes with armed robbery rather than depriving an officer of means of protection; (3) that there was sufficient evidence that James O'Brien was the person in the prison van, that O'Brien was in lawful custody, and that Valdes aided him in attempting to escape from custody so as to exclude every reasonable hypothesis of innocence of the crime of aiding in an attempted escape; and (4) that there was sufficient evidence of Valdes' participation to warrant his convictions for attempted murder. We note that the results of the O'Brien and Van Poyck trials and any acquittals or convictions in those trials are irrelevant to the present case. See Eaton v. State, 438 So.2d 822 (Fla. 1983); Potts v. State, 430 So.2d 900 (Fla. 1982).
[9] § 921.141(5)(b), (c), (e), (g), (i), Fla. Stat. (1989).
[10] § 921.141(6)(e), (d), Fla. Stat. (1989).